**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RAJWINDER KAUR; HARPAL SINGH
CHEEMA,
                              *Petitioners,*

            v.

ERIC H. HOLDER, JR., Attorney
General,
                              *Respondent.*

No. 06-71048

Agency Nos.
A072-484-174
A072-484-175

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 21, 2008—Las Vegas, Nevada

Filed April 1, 2009

Before: John T. Noonan, M. Margaret McKeown and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge McKeown;
Concurrence by Judge Noonan;
Concurrence by Judge Rawlinson

3909

## COUNSEL

Robert B. Jobe, San Francisco, California, for the petitioners.

Christopher C. Fuller, Department of Justice, Washington, D.C., for the respondent.

KAUR v. HOLDER                    3913

## OPINION

McKEOWN, Circuit Judge:

Harpal Singh Cheema and his wife Rajwinder Kaur appeal from the Board of Immigration Appeals' ("BIA") decision denying Cheema asylum and withholding of deportation[1] and denying Kaur asylum. We dismiss Cheema's appeal as moot. We reverse the BIA's denial of asylum for Kaur and remand for further proceedings.

Kaur found herself in a fundamentally unfair posture on her second trip to the BIA. The Board relied on classified evidence without giving her the barest summary notice required by the regulations, and the Board overrode the Immigration Judge's ("IJ") affirmative credibility finding by sanctioning the IJ's passing, unspecified reference to "lack of candor." These errors go to the heart of the asylum ruling and require a remand to the Board.

### BACKGROUND

The petitioners were before this court in *Cheema v. Ashcroft*, 383 F.3d 848 (9th Cir. 2004), which describes the lengthy immigration proceedings involving this couple and the government's allegations that they engaged in terrorist activity. We held that "the Board erred in determining whether Cheema was 'a danger to the security of the United States,'" and we remanded for determination under the correct legal standard. *Id.* at 859. We affirmed denial of Cheema's claim under the Convention Against Torture ("CAT"). Because we were "compelled to conclude that there is no evidence that Kaur engaged in terrorist activity," *id.*, her case was remanded for the Attorney General to exercise his discre-

---

[1]Because deportation proceedings began before April 1, 1997, the withholding claim is for withholding of deportation under former 8 U.S.C. § 1253(h) rather than withholding of removal under 8 U.S.C. § 1231(b)(3).

tion as to her asylum claim. We granted Kaur's petitions for withholding of deportation and relief under CAT.

On remand, the BIA took into account evidence classified as "secret" that was presented to the IJ in the original hearings —evidence that the BIA had set aside in its first decision. The BIA held Cheema to be a danger to the security of the United States and Kaur to be unworthy of a discretionary grant of asylum.

Both Cheema and Kaur petitioned for review. Cheema also filed a petition of habeas corpus in the Northern District of California, challenging his detention by the Department of Homeland Security ("DHS") in various county jails for the past eight years; the petition was granted but, on the government's motion, stayed. In February 2006, Cheema told the IJ that it would be better "to die in a real jail in front of his people" than to continue his confinement in this country. At his request, deferral of removal was terminated and he was deported on April 30, 2006.

In India, Cheema was promptly prosecuted before a Designated Court under the Terrorist and Disruptive Activities Act ("TADA"), the Explosive Substances Act of 1884, and the Explosive Substances Act of 1908 for offenses committed in 1992. He was acquitted of offenses under TADA and the Explosive Substances Act of 1884, but was convicted in 2007 under the Explosive Substances Act of 1908. On appeal, the Supreme Court of India noted that a prosecution in a Designated Court (a species of special tribunal set up under TADA) required the authorization of the Inspector General of Police or the Commissioner of Police. Because the required authorization had not been given, the Designated Court had tried Cheema without jurisdiction. Cheema's conviction was set aside in December 2007. *Harpal Singh v. State of Punjab*, 1 M.L.J. 875 (India 2008). No further proceedings affecting him in India are known to this court.

## ANALYSIS

**[1]** *Cheema*. Now that Cheema has been determined to be a danger to the security of the United States and has been deported, the question is whether his claim for withholding of deportation is moot. We agree with the government that we cannot give Cheema any relief with respect to withholding because he has already been deported and he suffers no collateral consequence from the withholding decision. There is simply no live controversy. *See Abdala v. INS*, 488 F.3d 1061, 1064 (9th Cir. 2007) (holding that "for a habeas petition to continue to present a live controversy after the petitioner's release or deportation . . . there must be some remaining 'collateral consequence' that may be redressed by success on the petition.").

**[2]** Cheema urges us that he falls under the collateral consequences exception to mootness. *See Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998) (holding that an exception to mootness arises where a petitioner would suffer collateral legal consequences from the challenged ruling). Citing a Third Circuit case, *Chong v. INS*, Cheema argues that he suffers a collateral consequence of the BIA's denial of his application for withholding: he cannot return to the United States for ten years, a consequence sufficient to keep his case alive. *See Chong v. INS*, 264 F.3d 378, 385 (3d Cir. 2001). Cheema's reliance on *Chong*, in which the only bar to reentry was the temporal ten-year bar, is flawed. Cheema's inadmissibility to the United States is not a collateral consequence of the BIA's denial of withholding of deportation; rather, it is a collateral consequence of the Board's *unchallenged* determination under 8 U.S.C. § 1182(a)(3)(B)(i)(I) that Cheema is an alien who engaged in terrorist activities. *See Abdala*, 488 F.3d at 1064-65 (holding that "a petitioner subject to the collateral consequence of a ten-year bar to reentry did not present a cognizable claim where the petitioner was also permanently barred from reentry on a wholly separate ground"). With the Board's holding as to terrorist activities undisturbed, the alleged col-

3916                         KAUR v. HOLDER

lateral consequence of inadmissibility does not arise from the
withholding decision. Cheema's case is moot and should be
dismissed.

*Kaur*. Following our remand in 2004, the BIA found that
Kaur had not been "completely candid" in her testimony and
that she had engaged in conspiracy to commit "immigration
fraud." The BIA found these two negative factors outweighed
the positive factors favoring the exercise of discretion to grant
asylum. We conclude that the BIA abused its discretion on
two fronts: (1) by using secret evidence without giving Kaur
sufficient notice about the parameters of that evidence to
allow her to defend against it; and (2) by holding, in the
absence of an adverse credibility finding, that Kaur was not
candid.

Kaur's petition comes to us in an unusual posture. When
the IJ issued her decision in 1999, she granted relief to Kaur
on all of her applications—asylum, withholding of deporta-
tion, and withholding of removal under the CAT. The govern-
ment's appeal to the BIA focused primarily on the allegations
regarding terrorist activity, although it mentioned immigration
fraud in passing. Specifically, the government's brief to the
BIA claimed that since Kaur "admits attempting to smuggle
her daughter, Roopi, into the United States, and also admits
paying a friend $3,000 to get her nephew into the United
States," she should be denied relief even though the IJ found
that "the hardships she has already endured and her well-
founded fear of future persecution outweigh these negative
factors."

In its first decision, dated May 8, 2002, the BIA relied
solely on unclassified information and focused exclusively on
Kaur's engagement "in terrorist activity since entering the
United States" and the fact that she was "a danger to the
security of the United States." The BIA made no reference to
immigration fraud, and it accepted the IJ's determination that
Kaur "was a credible witness."

On appeal to this court, we determined that Kaur had not engaged in terrorist activity, granted her petitions for withholding of deportation and relief under CAT, and remanded for the BIA to exercise its discretion in determining whether to grant asylum to Kaur. *Cheema*, 383 F.3d at 859-60. The issues of immigration fraud and candor were not before us in the first appeal. *Id.*

After remand, the BIA issued an unclassified decision and a classified attachment to that decision.[2] In the unclassified decision, the BIA stated that "as argued by the DHS, the unclassified summary of classified evidence relating to the female applicant states that 'reliable confidential sources have reported that Kaur has conspired to engage in alien smuggling; has attempted to obtain fraudulent documents; and has engaged in immigration fraud by conspiring to supply false documents for others.' " This statement, coupled with a reference to lack of candor, was the only basis for denial of asylum, at least as articulated by the BIA.

In this second appeal to our court, in addition to challenging the DHS's weighing of hardship factors, Kaur challenges the proceeding as unfair because of the use of secret evidence and argues that the BIA abused its discretion in finding that she had not been completely candid.

---

[2]The Litigation Security Section of the Department of Justice coordinated with security designees at the Ninth Circuit to make classified information available for viewing by members of the court. *See Al-Haramain Islamic Found. v. Bush*, 507 F.3d 1190, 1194 n.2 (9th Cir. 2007) (describing procedure for viewing sealed documents and classified non-public information). Because of recent terrorism cases, courts are increasingly familiar with the procedures associated with classified evidence. *See* Robert Timothy Reagan, Federal Judicial Center, *Terrorism-Related Cases: Special Case-Management Challenges (2008).*

## 1. Secret Evidence

**[3]** The regulations governing immigration proceedings permit the use of classified information. *See* 8 C.F.R. § 1240.33(c)(4) ("The Service counsel for the government may call witnesses and present evidence for the record, including information classified under the applicable Executive Order. "). In 1956, the Supreme Court sanctioned the use of confidential or secret information in connection with discretionary decisions in immigration proceedings. *Jay v. Boyd*, 351 U.S. 345 (1956). The continuing viability of *Jay* has been disputed, but we do not need to resolve that question here. Here, the use of secret evidence is limited by the regulations themselves and by the due process principle of "fundamental fairness." The lack of fair notice to Kaur violates both the regulations and due process.

### A. Regulatory Limitations on the Use of Secret Evidence

**[4]** The regulations state that a summary of the classified evidence "may" be provided if it is possible to "safeguard[ ] both the classified nature of the information and its source." 8 C.F.R. § 1240.33(c)(4). Such a summary "should be as detailed as possible, in order that the applicant may have an opportunity to offer opposing evidence." 8 C.F.R. § 1240.33(c)(4). Here, the DHS neither provided a meaningful summary nor claimed that a more detailed summary could not be provided because of the necessity to "safeguard[ ] both the classified nature of the information and its source."

**[5]** Under *Clark v. Martinez*, 543 U.S. 371, 379-81 (2005), where a provision of immigration law applies to both non-admitted and admitted aliens, it must be interpreted the same way as to both classes of aliens. Where the rule is ambiguous, it must be interpreted in such a way as to be constitutional as to admitted aliens. *Id.*

**[6]** The combination of permissive and mandatory language in the regulation creates just this sort of ambiguity. Read literally, the regulation appears to say that that a summary is not necessarily provided, yet if one is provided, it is required to be "as detailed as possible." To be constitutional as to admitted aliens, who are entitled to due process, *see Plyler v. Doe*, 457 U.S. 202, 210 (1982), the regulation must be read to require that summaries of the classified evidence be provided so long as it is possible to "safeguard[ ] both the classified nature of the information and its source." 8 C.F.R. § 1240.33(c)(4). The summaries must be "as detailed as possible" without jeopardizing "the classified nature of the information or its source," such that the alien can reasonably respond to the government's allegations.

**[7]** The summary provided by DHS is, at best, conclusory and opaque. It consists of a single sentence: "[R]eliable confidential sources have reported that RAJWINDER KAUR has conspired to engage in alien smuggling; has attempted to obtain fraudulent documents; and has engaged in immigration fraud by conspiring to supply false documents for others." This summary is simply insufficient to meet the standard in § 1240.33(c)(4) requiring that it be "as detailed as possible" to allow Kaur "an opportunity to offer opposing evidence." Kaur cannot rebut what has not been alleged.

**[8]** The DHS provided no further illumination beyond the summary. The government variously argued to the BIA that record references relate to purported conduct by Kaur with respect to her daughter, a nephew, and possibly others. These references are a moving target. They do not illuminate the conduct that was the basis of the alleged immigration fraud. If Kaur did indeed commit immigration fraud, then she personally would be knowledgeable of the details of what occurred, so there is little justification for failing to provide enough detail in the summary to allow her to respond to specific allegations. Providing more detail would not jeopardize the source of the information. At a minimum, Kaur should be

provided with the alleged dates of and individuals involved in the claimed fraud.

By way of comparison, the summary of classified evidence provided here contrasts sharply with the summary provided in *Kiareldeen v. Ashcroft*, where the Third Circuit held that "[i]nformation contained in the unclassified summaries was ultimately sufficient to assist Kiareldeen in mounting a defense to the allegations." 273 F.3d 542, 552 (3d Cir. 2001). Although Kiareldeen was accused of terrorism, the government provided him with the relevant details that would allow him to rebut the allegations. *Id.* at 551 n.2. The summary listed Kiareldeen's alleged associates, specified his alleged terrorist activities, listed his targeted victims, and gave locations and approximate dates for these alleged activities. *Id.* Some basic detail should be provided to Kaur to allow her the same opportunity to counter the accusation that she engaged in alien smuggling and immigration fraud.

## B.    Due Process Limitations on the Use of Secret Evidence

**[9]** In addition to the regulatory limitations, the use of secret evidence is cabined by constitutional due process limitations. Although the Federal Rules of Evidence do not apply in administrative proceedings, we have long held that there are limits on the admissibility of evidence and that the test for admissibility includes "fundamental fairness." *Martin-Mendoza v. INS*, 499 F.2d 918, 921 (9th Cir. 1974) (citing *Marlow v. INS*, 457 F.2d 1314 (9th Cir. 1972)). The BIA has also recognized this principle in its own decisions: "[t]o be admissible . . . evidence must be probative and its use fundamentally fair so as not to deprive respondents of due process of law as mandated by the fifth amendment." *In re Toro*, 17 I. & N. Dec. 340, 343 (B.I.A. 1980). The BIA failed to observe this rule in its decision in Kaur's case.

**[10]** When Kaur attempted entry into the United States, she was immediately detained at the border before being paroled

KAUR v. HOLDER                3921

into the country pending resolution of her asylum petition. Whatever the legal effect of her status at that time, once she was granted CAT relief in 2004, she surely had "entered" the United States for purposes of due process. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (noting distinction throughout immigration law "between an alien who has effected an entry into the United States and one who has never entered" with respect to due process rights); *Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094, 1097-99 (9th Cir. 2004) (same). Significantly, the BIA used secret evidence against Kaur for the first time *after* she had already been granted CAT relief, at which time she was an "admitted" alien for due process purposes. Therefore, use of the secret evidence without giving Kaur a proper summary of that evidence was fundamentally unfair and violated her due process rights.

## 2. Lack of Candor

The BIA also abused its discretion by bootstrapping a statement about Kaur's "lack of candor" to justify its decision. The IJ made an affirmative credibility finding, noting that "Ms. Kaur was also a convincing witness. Her testimony was detailed, consistent and plausible. Nothing in her demeanor nor the content of her testimony detracted from her credible demeanor."

**[11]** Although the IJ noted that "there are certain instances where this Court does not find the Applicants' testimony to be credible," this sort of passing statement does not constitute an adverse credibility finding. *Kalubi v. Ashcroft*, 364 F.3d 1134, 1137-38 (9th Cir. 2004) ("[I]t is clearly our rule that 'when the IJ makes implicit credibility observations in passing, . . . this does not constitute a credibility finding.' " (quoting *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 658-59 (9th Cir. 2003))). This selected reference, which is not even specific to Kaur, cannot undermine or detract from a positive credibility finding. Indeed, this passing reference is exactly that— passing. From this truncated reference, one would be hard

3922                    KAUR v. HOLDER

pressed to identify any basis for finding a lack of credibility as the IJ identified none.

**[12]** Because the BIA did not disturb the credibility finding, it cannot now latch onto an isolated, unsupported reference as a basis for its discretionary denial of asylum. In the absence of an adverse credibility finding, "testimony must be accepted as true." *Kalubi*, 364 F.3d at 1137 (citing *Kataria v. INS*, 232 F.3d 1107, 1114 (9th Cir. 2000)). In the face of a positive credibility finding, the BIA may not use an unspecified "lack of candor" reference to buttress a discretionary denial of asylum. *See Kalubi*, 264 F.3d at 1141-42.

PETITION GRANTED and REMANDED for further proceedings consistent with this opinion.

---

NOONAN, Circuit Judge, concurring:

I concur in the opinion and judgment of the court with this reservation: The use of secret "evidence" is itself a denial of a hearing. *Jay v. Boyd*, 351 U.S. 345, 361-62 (1956) (Warren, C.J., dissenting). If no hearing, then no process. This court and the BIA itself, as the opinion of the court states, have held that the test for the admissibility of evidence is "fundamental fairness." A summary of secret evidence does not provide opportunity for cross-examination of the witness furnishing it. The evidence is untested. To conclude that a process is fundamentally fair in which cross-examination is precluded is to say a circle is a square. The verbal assertion may be made. The assertion does not transform the circle. *See United States ex rel. Mezei*, 345 U.S. 206, 217-218, 224 (1953) (Black, J., joined by Douglas, J., dissenting) (comparing the power conceded to the Attorney General to the arbitrary procedures provided by the criminal law of Nazi-Germany or the Soviet Union) (Jackson, J., a former Attorney General and chief prosecutor at Nuremberg of Nazi crimes against humanity,

KAUR v. HOLDER 3923

joined by Frankfurter, J., dissenting) (stating simply that procedural due process is "of the indispensable essence of liberty"); *see also*, *Jay*, 351 U.S. at 365, 373, 375 (Black, J., dissenting) ("There is no possible way to contest the truthfulness of anonymous accusations. . . . In a court of law the triers of fact could not even listen to such gossip . . . .") (Frankfurter, J., dissenting) (quoting President Dwight E. Eisenhower as stating, "[i]n this country, if someone dislikes you, or accuses you, he must come up in front. He cannot hide behind the shadow. He cannot assassinate you or your character from behind, without suffering the penalties an outraged citizenry will impose") (Douglas, J., dissenting) ("Fairness, implicit in our notions of due process, requires that any 'hearing' be full and open with an opportunity to know the charge and the accuser, to reply to the charge, and to meet the accuser").

Neither *Jay* nor *Mezei* control in this case. *Jay* focused on the interpretation of a statute not at issue here. *Mezei* dealt with an unadmitted alien. Nonetheless, the constitutional insight of the dissenters is worth recalling. *Audi alteram partem* — Hear the other side. The Latin maxim has sometimes been taken by English authors as expressing the core of natural justice. The four dissenters in *Jay* and the four dissenters in *Mezei* reflect the same conviction that a proceeding where one party cannot test the information used against her is unjust.

As the opinion of the court observes, we do not need to resolve the question here; but I would not like to leave the impression that a summary of secret evidence would have provided due process.

RAWLINSON, Circuit Judge, concurring:

I concur in the conclusion that Petitioner Harpal Singh Cheema's petition for review has been mooted by his deporta-

3924                    KAUR v. HOLDER

tion. I agree with Judge McKeown that we should refrain from opining about Cheema's fate in India or the positions taken by the United States government.

Although I also concur that Petitioner Rajwinder Kaur's petition for review must be granted and this matter remanded, I do so reluctantly. As I detailed in my dissent to the majority opinion in our earlier decision, the unclassified evidence in this case provided adequate support for the denial of relief to Kaur. *See Cheema v. Ashcroft*, 383 F.3d 848, 860-61 (9th Cir. 2004), *as amended* (Rawlinson J. dissenting). Nevertheless, in view of the Board of Immigration Appeals' insistence on incorporating classified information into its decision, remand is appropriate as a matter of fundamental fairness. *See Saidane v. I.N.S.*, 129 F.3d 1063, 1065 (9th Cir. 1997); *see also Ladha v. I.N.S.*, 215 F.3d 889, 903-04 (9th Cir. 2000), *as amended* (noting that "if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case, . . . we will reverse the BIA's decision") (citations and internal quotation marks omitted).